UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF VIRGINIA
401 COURTHOUSE SQUARE
ALEXANDRIA, VIRGINIA 22314-5799

CHAMBERS OF
LIAM O'GRADY
UNITED STATES DISTRICT JUDGE

TELEPHONE: (703) 299-2121
FACSIMILE: (703) 299-3379

August 25, 2020

Mr. Brian Regan
#41051-083
Federal Correctional Institute - Hazelton
Post Office Box 5000
Bruceton Mills, WV  26525

RE:  United States v. Regan
     Cr. Case 1:01-405

Dear Mr. Regan:

The court received your letter of July 18, 2020 in which you state that the transcript of your sentencing hearing was transcribed inaccurately in many instances. The Court sees that as a serious allegation, and for that reason I asked a second, independent court reporter to retrieve the tapes of your hearing again, and transcribe the hearing a second time.

Enclosed you will find the second transcript. You will note three highlighted words from the original transcript that were heard by the second reporter differently than by the first reporter. They are highlighted to show you the difference. As you can see, the differences are minimal and make no change in the meaning or context of the statements.

I hope this clarifies your concerns.

Very truly yours,

Liam O'Grady

LOG:dw

Enclosure

UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF VIRGINIA

| | |
|---|---|
| **UNITED STATES OF AMERICA,** | ) |
| | ) Criminal Action |
| **Plaintiff,** | ) No. 1:01-CR-405 |
| | ) |
| **v.** | ) March 20, 2003 |
| | ) |
| **BRIAN P. REGAN,** | ) |
| | ) |
| **Defendant.** | ) |
| | ) |

*TRANSCRIPT OF SENTENCING PROCEEDINGS*
*BEFORE THE HONORABLE GERALD B. LEE,*
*UNITED STATES DISTRICT COURT JUDGE*

APPEARANCES:

For the United
States:

**Patricia M. Haynes, Assistant U.S.
Attorney**
United States Attorney's Office
2100 Jamieson Avenue
Alexandria, VA 22314
(703)299-3700
Email: Patricia.haynes@usdoj.gov

**James Philip Gillis, Assistant U.S.
Attorney**
United States Attorney's Office
2100 Jamieson Avenue
Alexandria, VA 22314
(703) 299-3897
Fax: (703) 299-3982
Email: James.p.gillis@usdoj.gov

**Steve Doyle, Assistant U.S. Attorney**
United States Attorney's Office
2100 Jamieson Avenue
Alexandria, VA 22314
(703) 299-3897
Fax: (703) 299-3982
Email: Steve.doyle@usdoj.gov

APPEARANCES:  Cont.

| | |
|---|---|
| For the United States: | **Joseph John McCarthy, Esq.**<br>Delaney McCarthy & Colton PC<br>510 King St<br>Suite 400<br>Alexandria, VA 22314<br>(703) 549-9701<br>Email: Mccarthy@lawdmc.com |
| For the Defendant: | **Jonathan Shapiro, Esq.**<br>Greenspun Shapiro PC<br>3955 Chain Bridge Rd<br>Second Floor<br>Fairfax, VA 22030<br>(703) 684-1700<br>Fax: 703-591-7268<br>Email: Js@greenspunlaw.com<br><br>**Nina J. Ginsberg, Esq.**<br>DiMuroGinsberg PC<br>1101 King Street<br>Suite 610<br>Alexandria, VA 22314-2956<br>(703) 684-4333<br>Fax: 703-548-3181<br>Email: Nginsberg@dimuro.com |
| Transcript Transcribed by: | **Scott L. Wallace, RDR, RMR, CRR**<br>Official Court Reporter<br>United States District Court<br>401 Courthouse Square<br>Alexandria, VA  2231-5798<br>703.549.4626<br>Scottwallace.edva@gmail.com |

Proceedings reported by machine shorthand, transcript produced by computer-aided transcription.

**P R O C E E D I N G S**

1

2

3  THE COURTROOM CLERK:  This is the *United States of America*

4  *versus Brian Regan.*

5  MS. HAYNES:  Patricia Haynes, James Gillis and Steve Doyle

6  on behalf of the United States.

7  THE COURT:  Good afternoon.

8  MR. McCARTHY:  Good afternoon, Your Honor.

9  THE COURT:  Good afternoon.

10  MR. McCARTHY:  Nina Ginsberg, John Shapiro, and Joe

11  McCarthy for Mr. Regan, Your Honor.

12  THE COURT:  Good afternoon.  Good afternoon, Mr. Regan.

13  MS. HAYNES:  Your Honor, the parties have reached a

14  proposed sentencing agreement in this case that's been provided

15  to the Court, and we do have a copy that has been signed by all

16  the parties.

17  THE COURT:  All right.  Mr. Regan, if you would come to

18  the podium with your counsel, please.

19  Mr. Regan, I understand that you agree to a life sentence

20  in this case; is that right?

21  THE DEFENDANT:  Yes, Your Honor.

22  THE COURT:  I want to go over with you this sentencing

23  agreement that you've signed to make sure that you understand

24  your rights and that you have been informed of your rights and

25  you understand the consequences of this agreement.  What I would

1  like to do is to tell you first, if you don't understand my

2  questions, please let me know.  And if at any time you don't

3  understand me, please tell me.  And if at any time you would like

4  to speak to your lawyer about the statement, please let me know,

5  okay?

6         All right.  What is your full name?

7         THE DEFENDANT:  Brian Patrick Regan.

8         THE COURT:  And Mr. Regan, how old are you?

9         THE DEFENDANT:  Forty.

10        THE COURT:  And can you read and write?

11        THE DEFENDANT:  Yes.

12        THE COURT:  How far did you go in school?

13        THE DEFENDANT:  Three years of college.

14        THE COURT:  And what did you study in college?

15        THE DEFENDANT:  Computer science.

16        THE COURT:  All right.  Have you taken any drugs or

17  alcohol before coming to court today?

18        THE DEFENDANT:  No, sir.

19        THE COURT:  And are you under the care of a psychiatrist?

20        THE DEFENDANT:  No.

21        THE COURT:  Are you receiving any psychotropic drugs of

22  any kind?

23        THE DEFENDANT:  Yes.

24        THE COURT:  What psychotropic drugs are you receiving?

25        THE DEFENDANT:  Prozac and anti-psychotic.

1    THE COURT:  All right.  And what is the reason you're
2  receiving anti-psychotic medication?
3    THE DEFENDANT:  Depression.
4    THE COURT:  Depression?  Okay.  And are you being treated
5  in the detention center for the depression?
6    THE DEFENDANT:  Yes, sir.
7    THE COURT:  All right.  And what medication have you had
8  today before coming to court?
9    THE DEFENDANT:  Nothing.
10    THE COURT:  Nothing?  Okay.  And I take it that you and
11  your lawyers have had a chance to meet to discuss this sentencing
12  agreement before today; is that right?
13    THE DEFENDANT:  That's correct.
14    THE COURT:  And how many times did you meet with your
15  lawyers about this sentencing agreement?
16    THE DEFENDANT:  Three times.
17    THE COURT:  Three times?  Okay.  Now, have you had ample
18  time to discuss the sentencing agreement with your lawyers?
19    THE DEFENDANT:  Yes.
20    THE COURT:  And have you reviewed it with them in detail?
21    THE DEFENDANT:  Yes.
22    THE COURT:  And have you had time to think about it?
23    THE DEFENDANT:  Yes.
24    THE COURT:  And you're prepared to enter into it?
25    THE DEFENDANT:  Yes.

1       THE COURT:  Now, are you satisfied with the work your
2   lawyers have done for you in this case?
3       THE DEFENDANT:  Yes.
4       THE COURT:  And do you believe you told them everything
5   that you know about the case before the case went to trial?
6       THE DEFENDANT:  Yes.
7       THE COURT:  And posttrial, have you told them everything
8   that you wanted to tell them about the case?
9       THE DEFENDANT:  Yes.
10      THE COURT:  All right.  And do you feel that your lawyers
11  have adequately represented you in this case?
12      THE DEFENDANT:  Yes.
13      THE COURT:  Do you have any complaint about them at all?
14      THE DEFENDANT:  No.
15      THE COURT:  Now, I have a document in front of me called
16  Sentencing Agreement.  What I would like to do is go over certain
17  parts of it with you.  It is 14 pages long, and it appears to be
18  signed by you on page 12, and I'm displaying it to you now.  Is
19  that your signature on page 12 of this agreement?
20      THE DEFENDANT:  Yes.
21      THE COURT:  And have you had time to review the agreement
22  with your lawyers?
23      THE DEFENDANT:  Yes.
24      THE COURT:  Let's start with page 1, paragraph 1 because
25  that tells me what you've agreed to do in this case.  And page 1,

1  paragraph 1 says the defendant agrees that his conviction in this

2  matter with regard to Count 1 -- Counts 1, 3 and 4 of the

3  superseding indictment were lawful and supported by the evidence

4  presented at trial.  As a result and in return for the

5  concessions made by the United States in this agreement, the

6  defendant knowingly agrees -- knowingly agrees to waive any and

7  all rights he possesses:  One, to appeal his conviction in this

8  matter pursuant to Rule 4(b) [4(B)] of the Federal Rules of Appellate

9  Procedure on any grounds whatever [whatsoever]; and two, to appeal any

10 sentence within a maximum provided in the statute of convictions

11 pursuant to 18 United States Code Section 3742 on any ground

12 whatever [whatsoever]; and three, to collaterally attack the conviction of

13 sentence in this matter pursuant to 28 U.S. Code Section 2255 or

14 otherwise.

15      Sir, do you understand that by signing this sentencing

16 agreement you're agreeing not to contest any legal issues that --

17 any legal issues that may have been derived from your trial in

18 the case?

19      THE DEFENDANT:  Yes.

20      THE COURT:  And this says that there won't be a review of

21 the case by the United States Court of Appeals for the Fourth

22 Circuit or the Supreme Court.  Do you understand that?

23      THE DEFENDANT:  Yes.

24      THE COURT:  And it says here that you've also agreed to

25 waive your right to appeal any sentence on any ground and also to

1  waive your right to bring a particular writ of habeas corpus

2  under 2255.  Do you understand that?

3          THE DEFENDANT:  Yes.

4          THE COURT:  Now, these are rights you would have if you

5  did not enter into this agreement.  You would have the right to

6  obviously appeal this case to the United States Court of Appeals

7  for the Fourth Circuit and to the United States Supreme Court.

8  Do you understand that?

9          THE DEFENDANT:  Yes.

10         THE COURT:  Now, paragraph 4 discusses the life sentence

11  that I just mentioned to you.

12         Now, have you discussed with your lawyer that life means

13  life?  That means from now on.  Do you understand that?

14         THE DEFENDANT:  Yes.

15         THE COURT:  It's natural life.  There's no parole, there's

16  no coming back later on.  Do you understand that?

17         THE DEFENDANT:  Yes.

18         THE COURT:  That's set forth in paragraph 5.

19         Now, paragraph 8 discusses your rights and survivor

20  annuity, and it bears a discussion here in paragraph 8 that you

21  are agreeing to immediate forfeiture of your military retirement,

22  except for that portion of your military retirement which is the

23  equivalent to a spousal survivor annuity, which you are assigning

24  to your wife.  Do you understand that?

25         THE DEFENDANT:  Yes.

1      THE COURT:  Now, that is dependent, it says here, that --

2  it says the defendant understands that his wife will receive any

3  portions of the military retirement pay dependent on her

4  continued full cooperation, and he agrees that if the United

5  States determines that his wife has failed to continue her full

6  cooperation, the defendant will, upon request of the United

7  States, execute a consent order of forfeiture covering his entire

8  military retirement, including that portion not previously

9  subject to this forfeiture.  Do you understand that?

10      THE DEFENDANT:  Yes.

11      THE COURT:  So, basically what that means is your wife has

12  agreed to provide truthful information to the government and to

13  cooperate with the government and to continue that, and as long

14  as she has done that within the satisfaction of the government,

15  then the government will not seek to forfeit the equivalence of

16  that spousal survivor annuity.  Do you understand that?

17      THE DEFENDANT:  Yes.

18      THE COURT:  Paragraph 9 refers to what I just said a

19  moment ago, and paragraph 10 discusses an agreement the

20  government has made with you not to prosecute your wife for

21  obstruction of justice related to the charges in the superseding

22  indictment before the execution of this agreement.

23      So, in essence, in this case your plea -- you're entering

24  into this sentencing agreement, in effect -- part of the

25  consideration that you are receiving here is a statement from the

```
 1   government that they will not seek to prosecute your wife for

 2   obstruction of justice relating to the charge in the indictment.

 3   Do you understand that?

 4           THE DEFENDANT:  Yes.

 5           THE COURT:  And obviously the Court does not have any

 6   control over your wife.  The only matter before the Court is your

 7   involvement in this particular case.  There's also a discussion

 8   of special administrative measures, which I think is

 9   self-explanatory.  That is to say that it is always up to the

10   Attorney General and the Bureau of Prisons to make their own

11   judgment about what's appropriate with respect to your

12   confinement.  Do you understand that?

13           THE DEFENDANT:  Yes.

14           THE COURT:  And the government here has not promised that

15   they're going to agree to whatever special administrative

16   measures you prefer, it's going to be entirely up to the Bureau

17   of Prisons with a recommendation that's set forth in paragraph

18   12.  Do you understand that?

19           THE DEFENDANT:  Yes.

20           THE COURT:  Now, there are terms of cooperation which are

21   in paragraph 13, and I don't think I'll read them aloud, but you

22   have paragraph 13 in front of you?

23           THE DEFENDANT:  Yes.

24           THE COURT:  Okay.  Well, 13(B) places an obligation on

25   you, and you're prepared to make that obligation?
```

1      THE DEFENDANT:  Yes.

2      THE COURT:  And have you started on that already?

3      THE DEFENDANT:  No.

4      THE COURT:  No?  Okay.  Now, subparagraph H, it's fairly

5  critical, just like paragraph B, because it discusses the

6  duration of your commitment, and it says it's a lifetime

7  commitment.  Do you understand what that means?

8      THE DEFENDANT:  Yes.

9      THE COURT:  And that you are fully responsible for

10  carrying out your obligations under paragraph 13?

11      THE DEFENDANT:  Yes.

12      THE COURT:  Now, paragraph 14 of this sentencing agreement

13  says that what you're receiving for this sentencing agreement is

14  an agreement about sentence, and this agreement as it affects

15  your spouse and her not being prosecuted for obstruction of

16  justice, but the government here is not promising to you or

17  telling you that they're going to come back to court at any

18  future time seeking any reduction in your sentence because of the

19  cooperation you offer here.  Do you understand that?

20      THE DEFENDANT:  Yes.

21      THE COURT:  Paragraph 15 also requires you to make -- to

22  forfeit any assets or money that is traceable to your espionage

23  activity, whether it's located here or in some other country, and

24  you're prepared to carry that out as well; is that right?

25      THE DEFENDANT:  Yes.

1      THE COURT:  Paragraph 20, which is on page 8, discusses

2    nondisclosure agreements, and I'm sure that your counsel has gone

3    over this with you in great detail.  The essence of paragraph 20

4    and 21 are that you acknowledge that you have in the past and

5    that you remain bound by nondisclosure agreements not to disclose

6    classified information to anyone under any circumstances, and

7    that you should not participate in any activity that would result

8    in disclosure of classified information.  Do you understand that?

9        THE DEFENDANT:  Yes.

10      THE COURT:  Paragraph 21, 23 and 24, again, all deal with

11    the issue of disclosure of information to anyone, including any

12    potential media contacts or individuals who may be involved with

13    production of any books, writings, songs or other information

14    about your involvement in this case and your activity leading up

15    to your arrest and conviction in this case, and have you fully

16    discussed those with your lawyers?

17        THE DEFENDANT:  Yes.

18      THE COURT:  And you understand that you're not to disclose

19    classified information under any circumstances to any of those

20    individuals or anyone else at any time from now on?

21        THE DEFENDANT:  Yes.

22      THE COURT:  And paragraph 25 also deals with the issue of

23    if, for some reason, there were possible publication of any kind,

24    whether they were media or print or electronic or otherwise,

25    information that somehow results in some profits, that you would

1    forfeit that profit or the proceeds, and you would not assist

2    family members or others in trying to acquire proceeds or profits

3    from that activity.  Do you understand that?

4         THE DEFENDANT:  Yes.

5         THE COURT:  There's also a restriction of your contact

6    with any foreign government or foreign powers, and I take it you

7    discussed that with your lawyers as well, and you understand that

8    that means while you're detained that you are not to try to

9    initiate contact or have contact with anyone from any foreign

10   government?

11        THE DEFENDANT:  Yes.

12        THE COURT:  And Mr. Regan, do you understand that by

13   signing this agreement, the rights that you're giving away, the

14   right to appeal and the right to bring a claim for habeas corpus,

15   these are rights you otherwise would be entitled to, and that

16   you're surrendering those rights in exchange for the things that

17   are set forth in the agreement, the things that I have mentioned

18   and the things I have not mentioned?  Do you understand that?

19        THE DEFENDANT:  Yes.

20        THE COURT:  Now, has anyone threatened you or forced you

21   to you enter into this agreement?

22        THE DEFENDANT:  No.

23        THE COURT:  Has anyone made any promise to you that you

24   will receive something other than what's set forth in writing in

25   this sentencing agreement?

```
1        THE DEFENDANT:  No.

2        THE COURT:  Have you had time to consult with your wife

3   about the wisdom of entering into this agreement such that it

4   mentions her and certain impacts that that will have on her and

5   the survivor annuity?

6        THE DEFENDANT:  No.

7        THE COURT:  But you -- this is something that you want to

8   do?

9        THE DEFENDANT:  I'm doing it to protect my wife and

10  children.

11       THE COURT:  You understand that the terms of this

12  agreement are that if I accept it, that I'm going to impose a

13  sentence of life and that will be the end of your case?  Do you

14  understand that?

15       THE DEFENDANT:  Yes.

16       THE COURT:  And you're prepared to do that now?

17       THE DEFENDANT:  Yes.

18       THE COURT:  All right.  Well, I've asked you a lot of

19  questions.  Have you understood my questions?

20       THE DEFENDANT:  Yes, sir.

21       THE COURT:  Do you have any questions for me?

22       THE DEFENDANT:  No, sir.

23       THE COURT:  Mr. McCarthy, have you all reviewed this

24  agreement with Mr. Regan?

25       MR. McCARTHY:  Yes, Your Honor.
```

1    THE COURT:  And he mentioned that there are at least three

2    occasions that you all discussed it; is that right?

3    MR. McCARTHY:  At least three, Your Honor.

4    THE COURT:  At least three.  And would you mind telling me

5    over what period of time you all had these consultations about

6    this agreement?

7    MR. McCARTHY:  With regard to this specific version,

8    within the past ten days I think I've met with Brian on three

9    different occasions at the detention center.

10   THE COURT:  All right.  And were there times in-between

11   the consultation before you came back so you would have time to

12   think about it?

13   MR. McCARTHY:  After discussions with the government, I

14   would relay to Mr. Regan the position the government was taking

15   and would come back and see him face-to-face.

16   THE COURT:  All right.  And how long has he had this

17   particular sentencing agreement?

18   MR. McCARTHY:  Probably Monday is when I got it, and I

19   went over it with Mr. Regan at the detention center then.

20   THE COURT:  On Monday.

21   MR. McCARTHY:  The beginning of the week.

22   THE COURT:  And today is Thursday, so he's had those three

23   days to further reflect upon it?

24   MR. McCARTHY:  And we read it together when I first got

25   it.

1       THE COURT:  All right.  And I will ask Ms. Haynes a
2   question, please.
3       Ms. Haynes, is this the complete sentencing agreement that
4   you all have reached with Mr. Regan?
5       MS. HAYNES:  It is, Your Honor.
6       THE COURT:  And Mr. McCarthy just said that the draft
7   that's before me probably was available to him on Monday, and he
8   took that to Mr. Regan on Monday.  Is that about right, according
9   to your recollection?
10       MS. HAYNES:  Your Honor, I can't remember precisely when
11   we provided that to Mr. McCarthy.  I thought it was more recently
12   than that, but I think he has a better recollection of that than
13   I do.
14       THE COURT:  But the substance of it --
15       MS. HAYNES:  -- But the terms we have been speaking about
16   for ten days, roughly, as Mr. McCarthy referenced.
17       THE COURT:  Okay.  All right.  And this is the complete
18   agreement that you reached with Mr. Regan and his counsel?
19       MS. HAYNES:  It is the complete agreement.
20       THE COURT:  All right.  Thank you.  All right, Mr. Regan,
21   I have asked you a lot questions.  You believe you understood all
22   my questions?
23       THE DEFENDANT:  Yes.
24       THE COURT:  Do you have any questions for me?
25       THE DEFENDANT:  No.

1         THE COURT:  All right.  Let the record reflect the Court's

2    questioned Mr. Brian Patrick Regan and reviewed with him the

3    sentencing agreement, and the Court finds that Mr. Regan is

4    competent; that the agreement has been explained to him; that he
     [has been]
5    is informed of his rights and he understands his rights, and he

6    understands the nature of the rights he has to appeal the case to

7    the Court of Appeals and the United States Supreme Court; he's
                              [a writ of]
8    been informed of his right to bring a petition for a writ of

9    habeas corpus, and that he is waiving his right to bring any

10   challenge to the legality of the detention on any Constitutional

11   grounds; that he understands that the sentencing agreement calls

12   for a sentence of life, and that there is no parole or any lesser

13   sentence than the rest of his natural life that he will serve;

14   that the -- that he's been fully informed of his rights to appeal

15   any issue that may have arisen during the trial; and that he also

16   acknowledges that his lawyers have adequately and effectively

17   represented him and that he has no complaints with his lawyers,

18   so the Court finds that the sentencing agreement is knowingly and

19   intelligently made, and he understands the consequences of it;

20   that the facts supporting it have been set forth to Mr. Regan by

21   his counsel; that Mr. Regan has had at least ten days to consider

22   the prudence of entering into this agreement; that he's had since

23   Monday of this week an opportunity to sit down with his counsel

24   and review the sentencing agreement and three days more to

25   reflect on the prudence of entering into it; that he understands

1    the consequences of it and the restrictions set forth, and the
2    Court finds that the agreement will be accepted as a knowing and
3    intelligent waiver of his rights as enumerated in the sentencing
4    agreement, so I'll accept it.  Does the government want to be
5    heard on sentencing in this case?  You can step back now.
6            MS. HAYNES:  No, Your Honor.
7            THE COURT:  All right.  Is there anything that the defense
8    counsel wants to say before sentencing the defendant?
9            MR. McCARTHY:  Nothing to add to the agreement, Your
10   Honor.
11           THE COURT:  Mr. Regan, is there any statement that you
12   want to make on your own behalf?
13           THE DEFENDANT:  Yes, Your Honor.  I'm truly sorry for my
14   actions, and I never meant to harm anyone, and I never attempted
15   to harm the United States.  I feel a life sentence is excessive
16   in my case.  I never harmed anyone.  I never killed anyone.  I'm
17   going to serve more time than any other spy ever, and my actions
18   come nowhere near any of those.  I'm entering into this to
19   protect my wife and children from anymore pain and suffering, and
20   I hope one day that the government will reconsider the sentence
21   and show some mercy so that I can spend the last few years of my
22   life with my children.  Thank you.
23           THE COURT:  Mr. Regan, do you understand that there is no
24   reconsideration of your sentence under this agreement?
25           THE DEFENDANT:  Yes, sir.  If the law was ever changed,

1    no?

2         THE COURT:  No.

3         THE DEFENDANT:  Nothing?

4         THE COURT:  Are you clear on that?  I want to make sure

[make you're]

5    you're absolutely clear.  Today, if I impose a life sentence,

6    that's it, from now on.  Do you understand that?

7         THE DEFENDANT:  Yes, sir.

8         THE COURT:  Now, you just said that you had questions

9    about whether or not the sentencing is disproportionate to

10   others.  You don't have to accept this if you don't want to enter

11   into it.

12        THE DEFENDANT:  I can't hurt my family anymore, and I have

13   to.

14        THE COURT:  Well, I just want to make sure you're clear

15   that --

16        THE DEFENDANT:  Yes, Your Honor --

17        THE COURT:  -- that no one has any interest in forcing you

18   to do something that you don't want to do.

19        THE DEFENDANT:  Yes.

20        THE COURT:  Is this what you want to do?

21        THE DEFENDANT:  Yes.

22        THE COURT:  Are you sure of it?

23        THE DEFENDANT:  Yes.  If it wasn't that they were going to

24   prosecute my wife, I wouldn't, but they are, so I must.

25        THE COURT:  Well, Mr. Regan, I'm not going to try to talk

1    you out of entering into this sentencing agreement.

2        THE DEFENDANT:  I understand.

3        THE COURT:  And I want to be absolutely clear on the

4    record, as I started this out, that you have to be clear that

5    this is what you want to do.

6        THE DEFENDANT:  Yes, Your Honor.

7        THE COURT:  And I'm sure Mr. McCarthy has discussed with

8    you your rights as relates to your wife's circumstances.  Have

9    you done that, Mr. McCarthy?  I'm sure you have.

10       MR. McCARTHY:  Yes, sir.

11       THE COURT:  Mr. Regan, in the face of your previous

12   statements that you wanted to enter into this agreement and my

13   acceptance of it, I am prepared to go forward with your

14   sentencing at this time, unless you tell me there's some good

15   reason not to, or if you tell me you don't want to enter into

16   this agreement.

17       THE DEFENDANT:  No, Your Honor.

18       THE COURT:  And do you want me to sentence you under this

19   agreement?

20       THE DEFENDANT:  Yes.

21       THE COURT:  Okay.  Mr. Regan, let me start out by saying

22   that I've had a chance now to review this case completely, and I

23   sat through the entire trial where I saw witnesses testify about

24   what you did or did not do, and a jury verdict clearly states

25   that you attempted to commit espionage against the United States,

1    and it was very troubling to me to find out that it appears that

2    this conduct began while you were in uniform in trust and service

3    to your nation, and it's obvious that your statements today and

4    the sentencing agreement reflect that you betrayed your country's

5    trust, and you were serving in the Air Force and designated

6    working with classified information, and not everyone is given

7    the opportunity to be trusted with our nation's secrets and

8    foreign intelligence and national defense information, and so

9    your betrayal here harms the nation's security, it harms the

10   people in the intelligence community who are trying to adhere to

11   their oath and to obey the law, and to secure our nation's

12   security.

13        It is true that maybe the information you were convicted

14   of attempting to sell here, maybe it's true that it did not cause

15   any harm, but I, having sat through the trial, am not persuaded

16   that it didn't cause any harm.  I'm persuaded it caused some

17   harm.  Perhaps it did not cause the death of some individuals as

18   other espionage cases in this court have, but it certainly caused

19   some harm, and there's no doubt that your attempted espionage put

20   our nation's intelligence gathering at risk and put our

21   intelligence collection at risk.

22        I find that your deliberate disloyalty and your reckless

23   actions are a disgrace to the uniformed men and women who serve

24   in our nation's armed services, and that you would do this is a

25   colossal act of dishonesty to your nation, to your country, and

1   to your family.  And I think now you have joined a list of

2   infamous spies who have caused some harm to our national defense

3   and glory, and it's no consolation that the harm that you caused

4   is, perhaps, less than others in your view or anyone else's; it

5   is still wrong and it is still harmful.  I make no comment about

6   the length of the sentence because it appears to be a product of

7   your own conscious decision to enter into this agreement, and

8   your reasons for entering into it are certainly understandable.

9           So, as a consequence, based upon the agreement entered

10  into by the parties, it's the judgement of the Court that you be

11  committed to the Bureau of Prisons for the rest of your natural

12  life, and you are remanded into custody at this time.  Thank you.

13                  (Proceedings adjourned.)

14

15                  **C E R T I F I C A T E**

16              I, Scott L. Wallace, RDR-CRR, certify that
        the foregoing is a correct transcript from the tape
17      recorded record of proceedings in the above-entitled
        matter.

18

19      /s/ Scott L. Wallace                    8/16/20
        -----------------------------          ----------------
20      **Scott L. Wallace, RDR, CRR              Date
            Official Court Reporter**

21

22

23

24

25